**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

**ASHANTE DIAZ,** on behalf of herself and all others similarly situated,

Plaintiff,

**-v.-**

**DVF Studio, LLC a/k/a Diane von Furstenberg,**

Defendant.

------------------------------------------------------------x

Case No. ___________

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff**, ASHANTE DIAZ** ("Plaintiff" or "Ms. Diaz") individually and on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through him undersigned counsel, **Robert Schonfeld, Esq.** of JOSEPH & NORINSBERG, LLC, brings this action against Defendant, **DVF STUDIO, LLC A/K/A DIANE VON FURSTENBERG** ("Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*., arising from Defendant's failure to ensure that its ecommerce Website, www.dvf.com is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff **ASHANTE DIAZ** is a legally blind resident of Bronx County, New York, residing at 1680 Pelham Parkway South, Apartment 1C, Bronx, New York 10461. According to a June 10, 2026 medical certification issued by **Bessie Abraham, OD**, of NYU Langone Health, Ms. Diaz has been diagnosed with **bilateral Neovascular (Exudative) Age-Related Macular Degeneration**, resulting in **no light perception in her left eye** and **approximately twenty percent (20%) functional vision in her right eye**, with a dense central scotoma. Dr. Abraham's certification confirms that Ms. Diaz's visual impairment constitutes a permanent disability meeting both federal and New York State statutory definitions of legal blindness. See Exhibit A. Because of the severity and permanence of her condition, Ms. Diaz cannot read standard print, cannot recognize product

photography or graphics, and cannot visually navigate a digital screen without assistive technology.

2. As a result of her irreversible vision loss, Ms. Diaz relies exclusively on screen-reader and screen-magnification software, including **JAWS**, **NVDA**, and **ZoomText**, to navigate digital interfaces, read product information, and complete online transactions. When a website is properly coded, screen-reader software can identify product images, read labels, announce interactive controls, and allow blind consumers to shop independently. When a website is not properly coded, screen-reader software cannot interpret essential content, rendering the site unusable for blind users.

3. Defendant **DVF Studio, LLC**, a Delaware limited liability company (File No. 2533047), owns, operates, and controls the commercial retail website **www.dvf.com**, through which it markets and sells women's apparel, dresses, jackets, sweaters, accessories, and related products to consumers nationwide, including in New York. DVF's product catalog includes seasonal collections, curated lookbooks, and promotional campaigns. The Website functions as a fully interactive online retail store and a primary channel through which Defendant advertises, promotes, and sells its merchandise.

4. Millions of Americans live with significant visual impairments, including more than two million who are legally blind. In New York alone, hundreds of thousands of residents are blind or visually impaired. Congress enacted the Americans with Disabilities Act to eliminate discrimination against individuals with disabilities and to ensure full integration, independent living, and equal opportunity. These protections extend to digital spaces. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web, and has issued formal guidance confirming that web accessibility is a legal obligation under Title III of the ADA.

5. The internet has become indispensable for modern life. It is a primary means of

shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted. This exclusion is not a technical inevitability — it is the direct and foreseeable consequence of a failure to design and maintain websites in conformance with established accessibility standards.

6. Screen reading software works by converting digital content into synthesized speech or refreshable Braille output. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper or empty heading structure, rely on mouse-only interactions, or contain broken ARIA references cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites and are denied equal access to the goods and services offered therein. Each of these barrier types was identified on www.dvf.com during the evaluation of Defendant's Website described more fully below.

7. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. WCAG 2.1 Level AA compliance is readily achievable through standard web development practices and is necessary to provide equal access under the ADA. Defendant, a sophisticated national apparel retailer headquartered in New York and generating more than $800 million in annual revenue, possesses the technical resources, staffing, and financial capacity to achieve full compliance. As a company employing between 1,000 and 5,000 people and operating

a large, nationwide e-commerce platform, Defendant has long had the ability to implement WCAG-compliant accessibility protocols but has chosen not to do so.

8. Plaintiff brings this civil action against **DVF Studio, LLC, a/k/a Diane von Furstenberg ("DVF")**, for its failure to design, construct, maintain, and operate its website, **www.dvf.com**, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its Website—and therefore to the goods and services offered therein, including signature products such as the **Briar Coat** and **Maxime Sweater**—constitutes a violation of Plaintiff's rights under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

9. On three separate occasions—**July 15, 2026; August 2, 2026; and September 5, 2026**—Ms. Diaz attempted to browse, evaluate, and purchase specific products from Defendant's Website using JAWS and ZoomText but was denied full and equal access because of the Website's pervasive accessibility barriers. During these visits, Ms. Diaz specifically attempted to research and purchase the **Briar Coat** from Defendant's "Jackets & Coats" collection and the **Maxime Sweater** from Defendant's knitwear catalog. These products are marketed as signature DVF designs and are not available through third-party retailers in the same curated configurations, making Defendant's Website the primary channel through which Ms. Diaz sought to obtain them.

10. During each visit, Ms. Diaz encountered multiple accessibility barriers that prevented her from completing her intended purchases, including missing or non-descriptive alternative text on product images, linked images without alt attributes, missing form labels, multiple conflicting labels on the same form controls, empty headings, empty links, very low color contrast, and broken ARIA attributes associated with navigation menus and interactive elements. These barriers prevented JAWS and other assistive technologies from announcing essential product information, including pricing, size and color options, fabric details, and customer reviews, and prevented Ms.

Diaz from reliably activating "Quick Add" controls, adding products to her cart, or completing checkout.

11. Automated accessibility audits confirm that the barriers Ms. Diaz encountered are neither isolated nor incidental. Independent WAVE accessibility validation reports of **www.dvf.com**—including scans of the **Jackets & Coats** category page and the **Maxime Sweater** product page documenting missing alternative text, linked images without alt attributes, empty links, missing and multiple form labels, empty headings, very low contrast, skipped heading levels, redundant links, and misuse of role="presentation" on content elements—confirm that the defects Ms. Diaz personally experienced are pervasive and systemic across the Website, not confined to the handful of pages she visited. These audits reveal widespread WCAG 2.1 Level A and AA violations across key shopping flows, demonstrating that Defendant's accessibility failures are structural and longstanding. See Exhibit B.

12. Public court records confirm that DVF has previously been sued for ADA website accessibility violations, including **Maria Mendizabal v. DVF Studio, LLC a/k/a Diane von Furstenberg (2017)** and subsequent actions filed in 2018 and 2019. Rather than remediate its Website in response to these lawsuits, Defendant, upon information and belief, did little or nothing of substance. Years later, the very same categories of barriers alleged in those actions—missing alternative text, empty links and buttons, broken ARIA attributes, inaccessible dynamic regions, unlabeled interactive elements, and improperly structured markup—remain rampant across the Website, now independently confirmed by current automated audits performed in connection with this action. Defendant's failure to correct known, previously litigated barriers over a period of years demonstrates a pattern of deliberate indifference to the rights of blind consumers, rather than an isolated oversight.

13. Plaintiff seeks a permanent injunction requiring Defendant to remediate the

Website's accessibility barriers, adopt accessibility policies and governance, and ensure that the Website is — and remains — fully accessible to blind and visually impaired consumers in substantial conformance with the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA. Plaintiff seeks a permanent injunction requiring Defendant to remediate the Website's accessibility barriers, adopt accessibility policies and governance, and ensure that the Website is — and remains — fully accessible to blind and visually impaired consumers in substantial conformance with the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA.

## **JURISDICTION & VENUE**

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

15. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

16. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in Bronx County which is within this District, and accessed Defendant's website from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where the plaintiff experiences the discriminatory denial of access to a website. See, *Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); see also *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

17. Defendant **DVF Studio, LLC**, a Delaware limited liability company (File No. 2533047), conducts substantial, continuous, and systematic business within this District by

marketing, advertising, and selling women's apparel, dresses, jackets, sweaters, accessories, and related products to New York consumers through its highly interactive retail Website, **www.dvf.com**. Defendant purposefully avails itself of the privilege of conducting business in New York by transmitting digital content, files, and data to consumers located in this District, fulfilling online orders to New York addresses, and engaging in nationwide e-commerce directed at New York residents. Courts within this Circuit have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. See *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, 592 U.S. ___ (2021); South Dakota v. Wayfair, Inc., 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.,* 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

18. Accordingly, jurisdiction and venue are proper in this District because Plaintiff resides here, accessed the Website from within this District, and suffered injury here. Courts within this Circuit have consistently held that website accessibility barriers encountered by users within the District provide a sufficient basis for personal jurisdiction over website operators whose digital platforms target or serve New York consumers, and Defendant's own history of having been sued repeatedly in this Circuit for the same conduct — including *Lucius v. DVF Studio, LLC a/k/a Diane von Furstenberg* No. 1:2024-cv-20157; *Mendez v. Madewell Inc.*, No. 1:2019-cv-11159; *Lopez v. Madewell Inc.,* No. 1:2018-cv-00103; and other ADA actions identified in PACER — forecloses any argument that it lacks fair notice of suit here.

19. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

20. Plaintiff **ASHANTE DIAZ** is, and at all relevant times, was, a resident of Bronx County, New York. Ms. Diaz is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by her examining optometrist, **Bessie Abraham, OD**, of NYU Langone Health, in a medical certification dated **June 10, 2026**, Ms. Diaz suffers from **bilateral Neovascular (Exudative) Age-Related Macular Degeneration ("Wet AMD")**, resulting in **no light perception in her left eye** and **approximately twenty percent (20%) functional vision in her right eye**, with a dense central scotoma. This condition constitutes permanent, irreversible legal blindness under both federal and New York State standards and requires the use of screen-reading and screen-magnification software to access digital content independently. Ms. Diaz's qualifying disability is formally registered with the **New York State Commission for the Blind**, Registration No. **379872**, as documented in her NYSCB Blind Card.

21. Plaintiff is a proficient user of screen-reader and screen-magnification technology, including **JAWS**, **NVDA**, and **ZoomText**, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because she cannot visually interpret printed or digital information without assistive technology, Ms. Diaz depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software. Proper semantic structure, meaningful alternative text, labeled interactive controls, and programmatically determinable navigation are not optional features for Ms. Diaz — they are the essential technical conditions upon which her ability to access any digital content independently depends.

22. Defendant **DVF Studio, LLC**, a Delaware limited liability company (File No.

**2533047**), owns, operates, controls, and maintains the commercial retail Website **www.dvf.com**, which markets and sells women's apparel, including dresses, jackets, sweaters, accessories, and related products to consumers nationwide, including residents of New York. The Website functions as a fully interactive online retail store and a primary channel through which Defendant advertises, promotes, and sells its merchandise, including flagship products such as the **Briar Coat** and the **Maxime Sweater**. Defendant is responsible for ensuring that the Website is designed, coded, and maintained in a manner that is accessible to individuals who rely on screen-reading technology.

23. For Ms. Diaz, the products she sought on **www.dvf.com** are directly connected to her life as a legally blind individual navigating daily responsibilities with severely restricted central vision. Wet AMD destroys the macular region responsible for fine detail and color perception, leaving individuals unable to visually inspect product labels, identify personal belongings by sight, evaluate the material construction or color of goods in a physical retail environment, or review descriptive and dimensional details of apparel without the aid of a screen reader conveying accessible digital content. As a result, Ms. Diaz must rely on accessible digital interfaces to obtain product information independently.

24. Defendant markets, advertises, and sells its products directly to New York consumers through its Website, **www.dvf.com**, transmits digital content to users located in this District, and maintains a highly interactive online platform that enables consumers to browse products, review descriptions, select sizes and colors, compare styles, and complete purchases. The Website includes detailed product pages that present images, descriptions, specifications, pricing, and purchasing information to consumers nationwide. Defendant's Website is the exclusive channel through which certain curated products, seasonal collections, and promotional offerings are sold, making accessible digital access essential for blind consumers seeking to purchase these items. Defendant is responsible for ensuring that its Website is designed, constructed, and maintained in a manner that

is compatible with screen-reader technology and accessible to blind and visually impaired individuals.

25. At all relevant times, Defendant has continuously conducted business within the Southern District of New York by offering its goods and services to residents of this District through its Website, **www.dvf.com**, and by repeatedly transmitting digital content, files, and data to consumers located here. Defendant fulfills online orders to New York addresses, markets its products to New York residents, and operates a nationwide e-commerce platform directed at consumers within this District. Defendant's ongoing operation of a highly interactive retail Website directed at New York consumers constitutes continuous and systematic business activity within this District.

## STATEMENT OF FACTS

***Plaintiff's Attempts to Access the DVP Website and Product Pages***

26. Plaintiff **ASHANTE DIAZ** is a legally blind consumer residing in Bronx County, New York, and is certified by the New York State Commission for the Blind as legally blind, as documented in her NYSCB Registration No. **379872**. According to a June 10, 2026 medical certification issued by **Bessie Abraham, OD**, of NYU Langone Health, Ms. Diaz suffers from **bilateral Neovascular (Exudative) Age-Related Macular Degeneration ("Wet AMD")**, resulting in **no light perception in her left eye** and **approximately twenty percent (20%) functional vision in her right eye**, with a dense central scotoma. Wet AMD is a permanent, irreversible, progressive retinal disease for which no curative treatment exists. Ms. Diaz's remaining vision is insufficient for reading standard print, recognizing product photography, or visually interpreting digital interfaces. As a result, she depends entirely on properly coded, screen-reader-compatible websites to shop independently, evaluate products, and access online information on equal terms with sighted consumers.

27. Wet AMD destroys the macular region responsible for fine detail, color perception,

and central visual acuity, leaving individuals unable to perceive product imagery, evaluate garment construction, or visually track interactive controls on a screen. Ms. Diaz's documented loss of central vision prevents her from perceiving product photography, color swatches, silhouettes, or fabric textures, and prevents her from visually locating or activating interactive controls such as size selectors, color selectors, or "Add to Bag" buttons. For Ms. Diaz, screen-reader software is not a convenience — it is a necessity for any form of independent digital commerce.

28. Defendant **DVF Studio, LLC**, a Delaware limited liability company (File No. **2533047**), owns, operates, and maintains the commercial retail Website **www.dvf.com**, which markets and sells women's apparel, including dresses, jackets, sweaters, accessories, and related products. DVF has cultivated a reputation for distinctive styling, curated seasonal collections, and premium garments not readily duplicated by mass-market competitors. DVF sells through its own Website, which functions as the primary channel through which consumers research sizing, colors, fabrics, construction details, and curated seasonal offerings not available in comparable configurations from third-party retailers.

29. In the summer of 2026, Ms. Diaz began searching for several apparel items she needed for upcoming family events and seasonal wardrobe updates. Because Ms. Diaz cannot visually inspect garments in physical stores, evaluate fabric or fit by sight, or read in-store signage, she — like most blind consumers — conducts the overwhelming majority of her shopping online, where accessible product descriptions, size charts, and screen-reader-compatible purchasing flows can, if properly implemented, substitute for the visual inspection available to sighted shoppers. Ms. Diaz specifically selected DVF and its Website, **www.dvf.com**, for several reasons: (a) DVF's jackets and knitwear collections are widely recognized for their quality and distinctive styling; (b) the **Briar Coat** and **Maxime Sweater** are flagship DVF products not readily duplicated by mass-market competitors; (c) DVF's Website advertises detailed product descriptions, fabric

information, and curated styling guidance that Ms. Diaz required to make an informed purchase; and (d) DVF's pricing sits at a level Ms. Diaz considers appropriate for durable, well-constructed apparel. Having narrowed her search to DVF for these reasons, Ms. Diaz required an accessible Website to independently evaluate specific garments, compare colors and sizes, read fabric and care information, and complete a purchase — precisely the functions that Defendant's Website denied her.

30. On **July 15, 2026**, using JAWS on her Windows computer, Ms. Diaz navigated to the product listing for the **Briar Coat** within the "Jackets & Coats" category. Immediately upon the page loading, JAWS announced multiple product images with **missing alternative text**, **linked images missing alt attributes**, or **empty alt attributes**, consistent with WAVE's findings of **7 missing alternative text errors** and **2 linked images missing alternative text** on the Jackets & Coats page. As a result, JAWS could only announce "image," leaving Ms. Diaz unable to determine the coat's color, silhouette, fabric texture, or design details — information a sighted user would obtain instantly from the product photography. When Ms. Diaz attempted to activate the "Quick Add" control, JAWS encountered an unlabeled interactive element with an **aria-label that did not match the visible text**, consistent with WAVE's findings of **multiple unlabeled or improperly labeled form controls**. Because of these compounding barriers — the missing alt text, the unlabeled "Quick Add" control, and the empty links — Ms. Diaz could not confirm the coat's details, could not reliably activate the purchasing control, and abandoned the transaction.

31. On **August 2, 2026**, Ms. Diaz returned to **www.dvf.com**, this time navigating to the product page for the **Maxime Sweater**. As on the Briar Coat page, JAWS announced multiple product images with missing alt attributes, leaving Ms. Diaz unable to determine the sweater's color, knit texture, fringe detailing, or silhouette. When Ms. Diaz attempted to review the "Size & Fit" section, JAWS encountered **empty links**, **empty headings**, and **broken ARIA attributes**,

consistent with WAVE's findings of **7 empty links**, **1 empty heading**, **multiple ARIA role misuse errors**, and **skipped heading levels**. When Ms. Diaz attempted to select a size, JAWS encountered **multiple form labels applied to the same control**, causing it to announce conflicting information and lose track of which control had focus. Unable to confirm the sweater's fit, unable to reliably select a size, and unable to trust that the "Buy It Now" or "Waitlist" controls had registered her selection, Ms. Diaz again abandoned the transaction.

32. On **September 5, 2026**, Ms. Diaz attempted a different strategy: rather than navigating directly to a single product, she browsed additional knitwear and jacket listings to determine whether DVF's Website presented any accessible purchasing flows. She found that product image regions were marked with **ARIA role="presentation"** on content elements, consistent with WAVE's findings of **multiple ARIA misuse errors**, and that portions of the interactive regions were marked **aria-hidden="true"** even though they remained visible and clickable for sighted users. When Ms. Diaz attempted to activate purchasing controls, JAWS again encountered **empty links** and **non-functional interactive elements**, causing the controls to fail silently. Having been defeated by multiple accessibility failures on three separate visits, targeting multiple pages of Defendant's Website, Ms. Diaz left **www.dvf.com** without being able to purchase anything.

33. The barriers Ms. Diaz encountered on the Patch-Pocket Shirt, Slim Everyday Jeans, and Perfect Vintage Jean pages are not isolated defects specific to those three URLs; they are individual instances of the same defect categories that SortSite's automated audits confirm are replicated, page after page, across substantially the entire Website. The placeholder alt text and missing alt attributes that left Ms. Diaz unable to evaluate garment details are present on more than 1,125 pages. The unlabeled ARIA controls that prevented Ms. Diaz from selecting sizes or colors are present on more than 281 pages. The empty href attributes that defeated Ms. Diaz's attempts to

activate "Add to Bag" controls are present across numerous pages. The role="list" defects and aria-hidden="true" misapplications that prevented JAWS from announcing product options are present across hundreds of pages. In short, whichever page of Defendant's Website a blind shopper using JAWS, NVDA, or components rather than confined to any single product listing.

34. Defendant's Website is not a passive marketing tool. It is a fully interactive retail platform central to Defendant's business model, offering product listings, detailed descriptions, size and color selectors, seasonal collections, a shopping cart, and checkout functionality. Defendant relies on **www.dvf.com** to market and distribute its products nationwide, including to consumers in New York, and to sell the very products Ms. Diaz attempted to purchase, including the **Briar Coat** and **Maxime Sweater**.

35. On information and belief, Defendant has operated **www.dvf.com** without implementing WCAG-compliant accessibility protocols, notwithstanding repeated ADA lawsuits filed against DVF Studio, LLC in **2017**, **2018**, and **2019**. Despite longstanding federal guidance and repeated notice, Defendant has not remediated the barriers identified in prior litigation or those identified in the WAVE audits of the Briar Coat and Maxime Sweater pages. The very same categories of issues — missing alternative text, empty and unlabeled links, improperly structured headings, ARIA misuse, empty interactive elements, and accessible names that bear no relationship to visible labels — persist across product listings, category pages, and navigational flows, reflecting a systemic and knowing disregard for blind and visually impaired users.

36. Plaintiff's intent to return to **www.dvf.com** is concrete, credible, and ongoing. Her interest is not abstract or generalized; it is tied to specific products — the **Briar Coat** and **Maxime Sweater** — specific attempted transactions on specific pages, and specific functional needs arising from her blindness, including the need for properly described product photography, accessible interactive controls whose announced names match what a sighted shopper sees, unique and

non-duplicated element identifiers, and a purchasing experience in which primary calls to action actually function for a screen-reader user.

37. Ms. Diaz continues to seek the **Briar Coat**, a garment she researched and attempted to purchase during her July 15, 2026, visit specifically because its tailored silhouette, seasonal styling, and premium construction matched the aesthetic she wanted and are not, on information and belief, readily duplicated by mass-market competitors at a comparable price and quality. Because Ms. Diaz cannot visually inspect fabric texture, color, or construction in person, she depends entirely on an accessible product page — properly labeled imagery, accessible size selectors, and a functioning, clearly announced "Quick Add" control — to complete this purchase. Once Defendant remedies the missing alt text, unlabeled controls, and empty link defects on that page, Ms. Diaz intends to return, select a size, and complete the purchase.

38. Ms. Diaz also remains interested in purchasing the **Maxime Sweater**, which she attempted to evaluate during her August 2, 2026 visit. For a blind consumer, the ability to have a screen reader accurately describe knit texture, fringe detailing, silhouette, and fabric composition is essential to making an informed purchasing decision about a premium garment. Ms. Diaz intends to revisit the Maxime Sweater product page to evaluate these features in an accessible format and complete the purchase once Defendant's Website presents properly described product photography, accessible interactive controls, and reliable purchasing functionality.

39. Plaintiff's need for accessible online shopping is permanent and ongoing. Her Wet AMD-related vision loss prevents her from browsing physical retail stores, reading garment tags, or visually inspecting fabric and construction. As a result, she relies exclusively on accessible e-commerce platforms to evaluate and purchase products such as those offered by DVF, whose curated seasonal collections — including jackets, sweaters, dresses, and accessories — make its Website a particularly valuable, but currently inaccessible, resource for blind consumers seeking

distinctive, well-constructed apparel that is not readily available from mass-market alternatives.

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action on behalf of herself, and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

> All legally blind individuals in the United States who have attempted to access www.dvf.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied equal access to the goods, services, and information offered thereon, including Defendant's personalized leather goods, accessories, travel items, and gift products.

41. Plaintiff also seeks certification of a New York subclass consisting of:

> All legally blind individuals residing in the State of New York who have attempted to access www.dvf.com and were denied equal access to the goods, services, and information offered thereon as a result of Defendant's failure to design, construct, maintain, and operate the Website in a manner compatible with screen reading software and keyboard navigation.

42. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant **DVF Studio, LLC**, a Delaware limited liability company, operates **www.dvf.com** as a nationwide e-commerce platform marketing premium women's apparel, jackets, sweaters, dresses, accessories, and curated seasonal collections to consumers throughout the United States. Public business profiles confirm that DVF maintains nationwide commercial operations and markets its products to consumers across all fifty states . Upon information and belief, there are more than **two million legally blind individuals** in the United States, hundreds of thousands of whom reside in New York, and a substantial number of whom have attempted to access

**www.dvf.com** and have been denied equal access due to the systemic accessibility barriers documented in the **WAVE evaluations conducted on the Briar Coat and Maxime Sweater pages**. Defendant's prior ADA litigation history — including **Mendizabal v. DVF Studio, LLC a/k/a Diane von Furstenberg (2017)** and subsequent actions filed in **2018** and **2019** — further demonstrates that Defendant has long been aware of accessibility failures affecting blind consumers and has nonetheless declined to take meaningful corrective action with respect to **www.dvf.com**.

43. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

(a) whether Defendant's Website, www.dvf.com, contains accessibility barriers that prevent blind and visually impaired individuals from independently accessing its goods, services, and personalization features;

(b) whether Defendant's failure to make its Website accessible violates Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

(c) whether Defendant's failure to maintain accessible digital content violates the New York State Human Rights Law and the New York City Human Rights Law;

(d) whether Defendant's conduct constitutes ongoing and intentional discrimination against blind consumers who rely on screen reading software to access digital content; and

(e) whether injunctive and declaratory relief is warranted to require Defendant to bring www.dvf.cominto full conformance with the Web Content Accessibility Guidelines, Version 2.1, Level AA.

44. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class and Subclass, is legally blind, relies on screen reading software and keyboard navigation as his exclusive means of accessing digital content, and was denied equal

access to www.dvf.com due to the same systemic accessibility barriers identified in the WAVE evaluations conducted by WebAIM. The barriers Plaintiff encountered — including missing alternative text, missing and empty form labels, empty heading elements, empty button and link elements, and broken ARIA references — are structural and site-wide deficiencies that affect every blind user who visits the Website, not just Plaintiff.

45. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has no interests antagonistic to those of the Class or Subclass. Plaintiff has retained counsel experienced in ADA Title III litigation, class action procedure, and digital accessibility matters, who are prepared to vigorously prosecute this action on behalf of Plaintiff and all members of the Class and Subclass.

46. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive and declaratory relief appropriate with respect to the Class as a whole pursuant to Rule 23(b)(2). Defendant continues to own, operate, and maintain www.dvf.com without any policy, plan, or practice sufficient to ensure accessibility for blind and visually impaired users, and without any timeline or commitment to remediate the barriers documented herein, thereby subjecting all blind users who visit the Website to the same discriminatory experience Plaintiff encountered on July 15, 2026, Aug. 2, 2026, and September 1, 2026.

47. Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate www.dvf.comin compliance with WCAG 2.1 Level AA, and because Defendant's acts and omissions apply uniformly to all blind individuals who attempt to use the Website. The accessibility barriers identified herein are not individualized — they are consistent, reproducible, and structural features of an inaccessible website that denies equal access to every blind user without regard to the specific product page, transaction, or date of access. Declaratory and injunctive relief compelling Defendant to bring www.dvf.com into full WCAG 2.1

Level AA compliance is the appropriate and necessary remedy to ensure equal access for Plaintiff and all members of the Class and Subclass.

**FIRST CAUSE OF ACTION**
(Violations of the ADA, 42 U.S.C. § 12182 et seq.)

48. Plaintiff, **ASHANTE DIAZ** on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

49. Defendant's Website, www.dvf.com is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen reading technology.

50. Defendant has failed to design, construct, maintain, and operate its website in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

51. Defendant's website contains numerous accessibility barriers—including missing alternative text, broken ARIA references, unlabeled buttons, inaccessible pop-ups, improper heading structure, and aria-hidden focusable content—that prevent blind users from perceiving, navigating, and interacting with the website.

52. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny

individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

53. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.
>
> 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

54. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.dvf.com has not been provided services that are provided to other patrons who are not disabled; and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility anomalies through consumer complaints,

automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

55. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**(“NYSHRL”)**

56. Plaintiff, **ASHANTE DIAZ,** on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

57. At all times relevant to this action, the New York State Human Rights Law (“NYSHRL”), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

58. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

59. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.dvf.com within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a “person” within the meaning of Article 15 of N.Y. Executive Law § 292(1).

60. Plaintiff has visited the Website, www.dvf.com on a number of occasions and has encountered barriers to his access that exist.

61. Under Article 15 N.Y. Executive Law § 296(2)(a) “it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager,

superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

62. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

63. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

64. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

65. Established guidelines exist for making websites accessible to disabled individuals.

The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

66. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

67. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

68. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

69. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

70. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's website contains access barriers denying blind customers full and equal access to the products, services, and facilities offered through the website.

71. A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

## **THIRD CAUSE OF ACTION**

**(Violation of New York State Civil Rights Law)**
**(“NYCRL”)**

72. Plaintiff, **ASHANTE DIAZ,** on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

73. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

74. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

75. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or him civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law (“NYCRL”) § 40-c.

76. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

77. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant’s Website, www.dvf.com is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates

against disabled individuals who are sight impaired.

78. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

79. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

80. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id...*

81. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

82. Plaintiff, **ASHANTE DIAZ,** on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

83. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

84. Defendant is subject to NYCHRL because it owns and operates the Website, www.dvf.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

85. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, www.dvf.com causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

86. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

87. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

88. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

89. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

90. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

91. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

92. Plaintiff is also entitled to reasonable attorneys' fees and costs.

93. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
**(Declaratory Relief)**

94. Plaintiff, **ASHANTE DIAZ,** on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

95. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182,

*et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

96. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.;
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.dvf.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;
- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing him counsel as Class Counsel;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
October 7, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
*/s/ Robert Schonfeld*
Robert L. Schonfeld, Esq.

*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889